UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BYRON DEWAYNE CUFF,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF STATE HOSPITALS (STOCKTON) CALIFORNIA HEALTH CARE FACILITY, OFFICIALS, et al.,<br><br>Defendants. | No. 2:16-cv-1999 MCE DB P<br><br><br>ORDER |

Plaintiff is a state prisoner proceeding pro se with a civil rights action under 42 U.S.C. § 1983. Plaintiff alleges defendants subjected him to excessive force and involuntarily medicated him. Before the court are plaintiff's motion to proceed in forma pauperis and plaintiff's complaint for screening. For the reasons set forth below, the court will grant plaintiff's motion to proceed in forma pauperis, finds plaintiff has stated cognizable claims against some defendants, and will give plaintiff leave to amend his complaint.

**IN FORMA PAUPERIS**

Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis will be granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in

1

1  accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will direct
2  the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and
3  forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated for monthly payments
4  of twenty percent of the preceding month's income credited to plaintiff's prison trust account.
5  These payments will be forwarded by the appropriate agency to the Clerk of the Court each time
6  the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C. §
7  1915(b)(2).

**SCREENING**

9  **I.      Legal Standards**
10     The court is required to screen complaints brought by prisoners seeking relief against a
11  governmental entity or an officer or employee of a governmental entity.  See 28 U.S.C. §
12  1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims
13  that are legally "frivolous or malicious," that fail to state a claim upon which relief may be
14  granted, or that seek monetary relief from a defendant who is immune from such relief.  See 28
15  U.S.C. § 1915A(b)(1) & (2).
16       A claim is legally frivolous when it lacks an arguable basis either in law or in fact.
17  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th
18  Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an
19  indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,
20  490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully
21  pleaded, has an arguable legal and factual basis.  See Franklin, 745 F.2d at 1227.
22       Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain
23  statement of the claim showing that the pleader is entitled to relief,' in order to 'give the
24  defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic
25  Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).
26  However, in order to survive dismissal for failure to state a claim a complaint must contain more
27  than "a formulaic recitation of the elements of a cause of action;" it must contain factual
28  allegations sufficient "to raise a right to relief above the speculative level."  Bell Atlantic, 550

2

U.S. at 555.  In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

**II.     Allegations of the Complaint**

Plaintiff states that on November 17, 2015, he was housed at the Department of State Hospitals – Stockton ("DSH").[1]  Plaintiff identifies the following defendants:  (1) R.

---

[1] DSH is located on the campus of the California Department of Corrections and Rehabilitation's ("CDCR") California Health Care Facility.  DSH is a psychiatric facility.  See http://www.dsh.ca.gov/Stockton/.  According to a notice plaintiff filed on December 15, 2016, he is currently incarcerated at California State Prison – Sacramento.  (ECF No. 11.)

3

1   Cunningham, Unit Supervisor; (2) McCarthy, Psychiatric Technician; (3) 19 unnamed additional
2   male Psychiatric Technicians; (4) Ward, Correctional Officer; (5) Ramos, Correctional Sergeant;
3   (6) Dr. Harris, Psychologist; (7) E. Palmer, Senior Psychiatric Technician; (8) J. Celaya, Senior
4   Psychiatric Technician; and (9) Osuj, R.N. All defendants appear to be employees of DSH.
5   (Compl. (ECF No. 1) at 2-3.)

6   On that date, plaintiff had a verbal altercation with a psychiatric technician ("Psych
7   Tech") regarding the handling of the food trays. The psychiatric technician informed plaintiff's
8   treatment team about plaintiff's "angry tone." As a result, plaintiff lost some privileges. Plaintiff
9   protested the loss of privileges by "yelling obscenities toward the staff through the crack of his
10  cell-door for about a half hour, admittedly upset." (Id. at 5.)

11  After plaintiff had calmed down, "twenty (plus) male Psych-Techs had gathered in front
12  of [plaintiff's] cell door in order to administer a medicated shot that had been ordered by
13  psychiatrist Dr. Harris." Defendant Ward approached plaintiff's cell and explained that a shot
14  had been ordered for plaintiff. Plaintiff objected, telling Ward he was not under a Keyhea order
15  for involuntary medication.[2] Ward then told plaintiff he would check with his sergeant, defendant
16  Ramos, about what to do. (Id.)

17  Defendant Ramos approached plaintiff's cell door and asked plaintiff if he was under a
18  Keyhea order. Plaintiff responded that he was not. Ramos left to "check on it." Plaintiff states
19  that Ramos and Ward did not return to plaintiff's cell, but waited a few cell-doors down in the
20  hallway.

21  Defendant Cunningham then came to the cell door and told plaintiff to stand back.
22  Plaintiff repeated that he was not under a Keyhea order. Cunningham told plaintiff to "stand
23  down," unlocked the door, and opened it. Plaintiff states that defendant McCarthy stood at the
24  entrance to plaintiff's door and "took an aggressive stance." Fearing for his safety, plaintiff
25  struck McCarthy. McCarthy and other Psych-Techs pushed plaintiff back into his cell and struck

---

26  [2] In Keyhea v. Rushen, 178 Cal. App. 3d 526, 542 (1986), the court set forth the substantive and
27  procedural safeguards which must be adhered to when the state seeks to involuntarily medicate
    state prisoners with long-term psychotropic medications. Such courts orders are commonly
28  known as Keyhea orders.

4

1 him repeatedly in the face. Even after plaintiff's was secured on the bed, Psych-Techs continued
2 to hit him. (Id. at 6-7.)

3     A female Psych-Tech then entered, others pulled down plaintiff's pants, and the female
4 Psych-Tech administered a shot to plaintiff's buttocks. As the group was leaving plaintiff's cell,
5 they took his clothes and took all of his personal property, including pictures from his walls. (Id.
6 at 7.)

7     In addition to trauma to his face, plaintiff states that he believes he broke his wrist as a
8 result of this incident. (Id.)

9     As relief, plaintiff seeks a declaratory judgment, compensatory and punitive damages,
10 costs of suit, and any equitable relief the court deems necessary. (Id. at 4.)

11     **III.**    **Does Plaintiff State a Potentially Cognizable Claim?**

12 Plaintiff alleges his claims are for retaliation and use of excessive force. He also appears to
13 be alleging a claim of involuntary medication. Before addressing the substance of plaintiff's
14 allegations, the court addresses plaintiff's identification of unnamed defendants.

15     **A. Unidentified Defendants**

16     There is no provision in the Federal Rules of Civil Procedure for including unnamed
17 defendants, also called "Doe" defendants, in a complaint. The use of Does in pleading practice is
18 generally disfavored – but it is not prohibited. See Gillespie v. Civiletti, 629 F.2d 637, 642 (9th
19 Cir. 1980); Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999); Lopes v. Viera, 543 F.
20 Supp. 2d 1149, 1152 (E.D. Cal. 2008). However, plaintiff must allege facts showing when,
21 where, and how each Doe defendant violated his constitutional rights. See Addis v. Ariz. Dept. of
22 Corrs., No. CV14-1115-PHX-DGC, 2015 WL 875233, at *3 (D. Ariz. Mar. 2, 2015). Under §
23 1983, plaintiff must demonstrate that each defendant personally participated in the deprivation of
24 his rights. See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). In other words, there must
25 be an actual connection or link between the actions of the defendants and the deprivation alleged
26 to have been suffered by plaintiff. See Monell, 436 U.S. at 691, 695.

27     Plaintiff fails to identify any specific action, or inaction, by any specific unnamed
28 defendant. He must identify individuals and what they did. If plaintiff decides to amend his

5

complaint, and if plaintiff still does not know the identity of certain defendants, he should identify them by number, such as "Doe 1" or "Doe 2," and explain just what that person did that caused a violation of plaintiff's rights.

Plaintiff must make every effort to determine the identity of each defendant. Eventually plaintiff may be afforded an opportunity for limited, preliminary discovery to identify the names of the Doe defendants "unless it is clear that discovery would not uncover their identities," Gillespie, 629 F.2d at 642, and only after the court is satisfied he has exhausted every other possibility of finding their names. Since by this order plaintiff will be granted leave to file an amended complaint, he must use the time given to amend to do everything he can to supply the names of the Doe defendants without further assistance from the court. He may seek extensions of time for the filing of an amended complaint for that purpose if necessary.

### B. Retaliation

#### 1. Legal Standards

To plead retaliation in violation of the First Amendment and to recover under 42 U.S.C. § 1983, a plaintiff must allege and show:

> (1) [that] he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.

Blair v. Bethel Sch. Dist., 608 F.3d 540, 543 (9th Cir. 2010); Skoog v. County of Clackamas, 469 F.3d 1221, 1232 (9th Cir. 2006); Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2004). To rise to a constitutional violation, the defendant's adverse action "must be of a nature that would stifle someone from speaking out." Blair, 608 F.3d at 544. Examples of adverse actions are "'exercise[s] of governmental power' that are 'regulatory, proscriptive, or compulsory in nature' and have the effect of punishing someone for his or her speech." Id. (quoting Laird v. Tatum, 408 U.S. 1, 11 (1972)). Furthermore, direct or circumstantial evidence can demonstrate that a defendant intended to inhibit free speech. Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300-01 (9th Cir. 1999). Verbal harassment or abuse is "not sufficient to state a

1  constitutional deprivation under 42 U.S.C. § 1983." Oltarzewski v. Ruggiero, 830 F.2d 136, 139
2  (9th Cir. 1987).

### 2. Does Plaintiff State a Claim for Retaliation?

Plaintiff's retaliation claim is not clear. He seems to be describing two separate possible events, neither of which states a retaliation claim at this point. First, if plaintiff is alleging that his disagreement about the food service was protected conduct, he must explain what was done in retaliation. It is not clear from plaintiff's complaint that he is alleging the removal of some privileges was retaliatory. Second, if plaintiff is alleging that his half hour of yelling obscenities was protected conduct that resulted in the excessive force and forced medication, he must show why yelling obscenities is protected conduct. Not every type of speech is protected. See Quezada v. Herrera, No. 1:10-cv-0483-AWI-GBC (PC), 2012 WL 1076130, at *4 (E.D. Cal. Mar. 29, 2012) (complaining that inmates had to wear hairnets not protected speech), aff'd, 520 F. App'x 559 (9th Cir. 2013); Thomas v. MCSO, No. CV 09-0708-PHX-DGC (JRI), 2009 WL 1311992, at *3 (D. Ariz. May 12, 2009) (calling an officer a derogatory name is not protected conduct); Ruiz v. Cal. Dept. of Corr., No. CV 07-1775 JSL (SS), 2008 WL 1827637, at *2 (C.D. Cal. Apr. 22, 2008) (prisoner's comments expressing dissatisfaction about matters of personal concern to inmate was not a matter of public concern protected by the Free Speech Clause); Whitfield v. Snyder, 263 F. App'x 518 (7th Cir. 2008) (prisoner's complaint about prison job involved matters of personal, rather than public, concern and did not qualify as protected speech). Finally, plaintiff must show that the actions of defendants "did not advance a legitimate correctional purpose." Quezada, 520 F. App'x at 559 (finding district court properly dismissed retaliation claim based, in part, on plaintiff's failure to allege facts showing that defendants' actions did not advance a legitimate purpose).

Plaintiff's retaliation claims will be dismissed with leave to amend.

### C. Excessive Force

#### 1. Legal Standards

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 5 (1992). For

7

claims arising out of the use of excessive physical force, the issue is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (quoting Hudson, 503 U.S. at 7). The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8, and although de minimis uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident, Wilkins, 559 U.S. at 37-8 (citing Hudson, 503 U.S. at 9-10).

Inactivity in the face of circumstances in which the reasonable correctional officer would know that he needed to take steps to avoid the use, or continued use, of excessive force on an inmate will lead to liability. Lolli v. County of Orange, 351 F.3d 410, 418 (9th Cir. 2003); Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995). One does not have to be a supervisor in order to be liable for such "inactivity." See Kraft v. Laney, No. CIV S–04–0129 GGH, 2005 WL 2042310, at *5 (E.D. Cal. Aug. 24, 2005) (citing Fundiller v. Cooper City, 777 F.2d 1436, 14411442 (11th Cir. 1985) ("It is not necessary that a police officer actually participate in the use of excessive force in order to be held liable under section 1983. Rather, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force . . . can be held liable for his nonfeasance.")); cf. Claiborne v. Blauser, No. 2:10-cv-2427 LKK EFB P, 2013 WL 1384995, at *5 (E.D. Cal. Apr. 4, 2013) (plaintiff sufficiently alleged a claim that an officer failed to intervene where he alleged excessive force by a second officer during an escort by both officers). "'To state a claim for failure to intervene, Plaintiff must allege circumstances showing that these officers had an opportunity to intervene and prevent or curtail the violation (e.g., enough time to observe what was happening and intervene to stop it), but failed to do so.'" Gonzales v. Cate, No. 1:06-cv-1420-AWI-MJS (PC), 2011 WL 1332174, at *3 (E.D. Cal. Apr. 5, 2011) (citing Robins, 60 F.3d at 1442), findings and recos. adopted, 2011 WL 1885392 (E.D. Cal. May 18, 2011); Lanier v. City of Fresno, No. CV F 10-1120 LJO SKO, 2010 WL 5113799 (E.D. Cal. Dec. 8, 2010).

////

### 2. Does Plaintiff State an Excessive Force Claim?

Plaintiff has stated a potentially cognizable Eighth Amendment claim for excessive force against defendant McCarthy for McCarthy's involvement in entering plaintiff's cell and continuing to beat plaintiff after plaintiff was subdued.  Plaintiff has also stated potentially cognizable claims against defendants Ward, Ramos, and Cunningham for their failure to intervene and stop the beating.

### D.  Involuntary Administration of Medication

#### 1. Legal Standards

Prisoners have a substantial liberty interest, grounded in the Due Process Clause, in avoiding the involuntary administration of medication. Washington v. Harper, 494 U.S. 210, 229 (1990).  Although prisoners may be involuntarily medicated if they are a danger to themselves or others and the treatment is in their best medical interest, they must be provided with procedural protections to ensure that the decision to medicate them involuntarily is not arbitrary or erroneous.  Id. at 227–28.  The Harper procedural requirements may not, however, apply in an emergency situation.  See Hogan v. Carter, 85 F.3d 1113, 1115-17 (4th Cir. 1996) (involuntary administration of medication to an inmate who "had been in the throes of an uncontrollable seizure for . . . three hours" was necessary to protect inmate from imminent, self-inflicted harm); Leeks v. Cunningham, 997 F.2d 1330, 1335 (11th Cir.1993) ("[T]he courts having concluded that under certain circumstances the involuntary administration of antipsychotic drugs were violative of due process, did so with an 'emergency exception.'" (Citations omitted.)).  Due process may also permit involuntary medication in other circumstances.  See Green v. Dormire, 691 F.3d 917, 924 (8th Cir. 2012) (involuntary medication of inmate where "clinically necessary" does not violate due process).

Under state law, the court in Keyhea v. Rushen, 178 Cal. App. 3d 526, 542 (1986), set forth the substantive and procedural safeguards which must be adhered to when the state seeks to involuntarily medicate state prisoners with long-term psychotropic medications.  The Keyhea procedure also includes the involuntary medication of inmates in an emergency, which is defined as "a sudden, marked change in an inmate's condition so that action is immediately necessary for

9

the preservation of life or the prevention of serious bodily harm to the inmate or others, and it is impracticable to first obtain consent." Cal. Code. Regs., tit. 15, §3351(a).

### 2. Does Plaintiff State a Due Process Claim?

Plaintiff states that he yelled obscenities for a half hour after learning that he was losing some privileges. He then calmed down, presumably stopped yelling, and began reading a magazine. It was at this point that officers approached plaintiff and told him a medicated shot had been ordered. Plaintiff states that he was not subject to an order permitting the prison to involuntarily medicate him. On these facts, plaintiff has stated potentially cognizable claims for a violation of his due process rights against defendant Dr. Harris, who ordered the shot, and against officers Cunningham and McCarthy who accessed plaintiff's cell and helped subdue him in order to give him the shot.

### IV. Conclusion

The court finds plaintiff has stated potentially cognizable Eighth Amendment claims against defendants McCarthy, Ward, Ramos and Cunningham; and potentially cognizable due process claims against defendants Harris, Cunningham, and McCarthy. The court further finds that plaintiff has failed to state claims against the Doe defendants and they will be dismissed from this action. In addition, while defendants Palmer, Celaya, and Osuj are named as defendants, plaintiff fails to identify any conduct by these defendants. Accordingly, they too will be dismissed from this action. Finally, plaintiff fails to state a potentially cognizable retaliation claim against any defendant and that claim will be dismissed as well.

The court will provide plaintiff an opportunity to file an amended complaint. Plaintiff is not obligated to filed an amended complaint. If he chooses not to do so, this case will proceed on the Eighth Amendment and due process claims identified above against defendants McCarthy, Ward, Ramos, Cunningham, and Harris.

### FILING AN AMENDED COMPLAINT

If plaintiff chooses to amend his complaint, he is advised that in an amended complaint he must clearly identify each defendant and the action that defendant took that violated his constitutional rights. The court is not required to review exhibits to determine what plaintiff's

charging allegations are as to each named defendant. If plaintiff wishes to add a claim, he must include it in the body of the complaint. The charging allegations must be set forth in the amended complaint so defendants have fair notice of the claims plaintiff is presenting. That said, plaintiff need not provide every detailed fact in support of his claims. Rather, plaintiff should provide a short, plain statement of each claim. See Fed. R. Civ. P. 8(a).

Any amended complaint must show the federal court has jurisdiction, the action is brought in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true. It must contain a request for particular relief. Plaintiff must identify as a defendant only persons who personally participated in a substantial way in depriving plaintiff of a federal constitutional right. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation).

In an amended complaint, the allegations must be set forth in numbered paragraphs. Fed. R. Civ. P. 10(b). Plaintiff may join multiple claims if they are all against a single defendant. Fed. R. Civ. P. 18(a). If plaintiff has more than one claim based upon separate transactions or occurrences, the claims must be set forth in separate paragraphs. Fed. R. Civ. P. 10(b).

The federal rules contemplate brevity. See Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)"); Fed. R. Civ. P. 84; cf. Rule 9(b) (setting forth rare exceptions to simplified pleading). Plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8.

An amended complaint must be complete in itself without reference to any prior pleading. E.D. Cal. R. 220. Once plaintiff files an amended complaint, the original pleading is superseded.

By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and has evidentiary support for his allegations, and for violation of this rule the court may impose sanctions sufficient to deter repetition by plaintiff or others. Fed. R. Civ. P. 11.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Plaintiff's motion to proceed in forma pauperis (ECF No. 2) is granted.
2. Plaintiff's claims against the Doe defendants and against defendants Palmer, Celaya, and Osuj, and his retaliation claims, are dismissed with leave to amend.
3. Plaintiff is granted thirty days from the date of service of this order to file an amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice.  The amended complaint must bear the docket number assigned this case and must be labeled "First Amended Complaint."  Plaintiff must file an original and two copies of the amended complaint. If plaintiff does not file an amended complaint within the time provided, this case shall proceed on the potentially cognizable claims identified above in his existing complaint
4. The Clerk of the Court is directed to send plaintiff a copy of the prisoner complaint form used in this district.

Dated:  March 30, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-civil rights/cuff1999.scrn