UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRIAN DEWAYNE CUFF,

Plaintiff,

v.

DEPARTMENT OF STATE HOSPITALS, et al.,

Defendants.

No. 2:16-cv-1999 MCE DB P

ORDER

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action under 42 U.S.C. § 1983. Plaintiff alleges defendants subjected him to excessive force and involuntarily medicated him. Before the court is plaintiff's motion to compel responses to a request for production of documents and his motion for inspection and a protective order. For the reasons set forth below, the court will grant in part plaintiff's motion to compel and deny plaintiff's motion for inspection and a protective order.

**BACKGROUND**

On November 6, 2017, the court issued a Discovery and Scheduling Order which set a deadline of March 2, 2018 for the parties to conduct discovery and file any discovery-related motions. The order required the service of discovery at least 60 days before the cut-off date and gave the parties 45 days to respond to discovery requests. (ECF No. 28.) On February 12, 2018,

1

plaintiff filed a motion to extend the discovery deadline and a motion to compel defendants to respond to discovery. (ECF Nos. 33, 34.)

In a statement filed on March 22, defendants stated that they did not receive plaintiff's interrogatories and requests for production until February 28, despite the fact they are dated November 16, 2017. (ECF No. 37.) Defendants did not oppose plaintiff's motion to compel. Both parties sought an extension of the discovery deadline.

In an order filed March 27, 2018, the court granted plaintiff's motion to compel and extended the discovery deadline to May 28, 2018. (ECF No. 38.)

On May 8, 2018, plaintiff filed two documents. The first is entitled "Plaintiff's Opposition to the Defendants' Responses to Set, No. One Production of Documents. With a Request to the Court for a Motion to Compel. FRCP 37(a)." (ECF No. 41.) The second is plaintiff's "Second Motion Requesting the Court to Compel Disclosure from Defendants'." Plaintiff contends defendants have failed to provide him documents responsive to his six requests for production. Plaintiff also asks the court to ask three questions of defendants in response to their answers. Defendants oppose the motion. (ECF No. 43.) Plaintiff filed a reply. (ECF No. 46.)

On May 29, 2018, plaintiff filed a document entitled "Plaintiff's Motion for Inspection of Things and Places; With Accompanying Request for a Protective Order." (ECF No. 44.) In this motion, plaintiff seeks photographs and videos of the hallway outside his cell and of his cell. Defendants did not file a response to this motion.

**MOTION TO COMPEL**

**I.     Legal Standards**

Under Rule 37 of the Federal Rules of Civil Procedure, "a party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). The court may order a party to provide further responses to an "evasive or incomplete disclosure, answer, or response." Fed. R. Civ. P. 37(a)(4). "District courts have 'broad discretion to manage discovery and to control the course of litigation under Federal Rule

////

of Civil Procedure 16.'" Hunt v. County of Orange, 672 F.3d 606, 616 (9th Cir. 2012) (quoting Avila v. Willits Envtl. Remediation Trust, 633 F.3d 828, 833 (9th Cir. 2011)).

The party moving to compel bears the burden of informing the court (1) which discovery requests are the subject of the motion to compel, (2) which of the responses are disputed, (3) why the party believes the response is deficient, (4) why any objections are not justified, and (5) why the information sought through discovery is relevant to the prosecution of this action. McCoy v. Cambra, No. 1:02-cv-5646-AWI-SMS PC, 2008 WL 860523, at *4 (E.D. Cal. Mar. 27, 2008). The reach of Rule 34 of the Federal Rules of Civil Procedure, which governs requests for production, "extends to all relevant documents, tangible things, and entry upon designated land or other property." Clark v. Vega Wholesale Inc., 181 F.R.D. 470, 472-73 (D. Nev. 1998) (citing 8A C. Wright & A. Miller, Federal Practice and Procedure § 2206, at 381).

The purpose of discovery is to "remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." United States v. Chapman University, 245 F.R.D. 646, 648 (C.D. Cal. 2007) (quotation and citation omitted). Rule 26(b)(1) of the Federal Rules of Civil Procedure offers guidance on the scope of discovery permitted:

> Parties may obtain discovery regarding any nonprivileged information that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"Relevance for purposes of discovery is defined very broadly." Garneau v. City of Seattle, 147 F.3d 802, 812 (9th Cir. 1998). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." Bryant v. Ochoa, No. 07cv200 JM (PCL), 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009) (internal citation omitted).

////

**II. Analysis**

**A. Request No. 1**

> Need the (Operating Procedures) hereby reffered to as ("OP's") of the composed (TSI) "Team's"; specifically, all "member's" involved; including the (Unit Supervisor's) & their "duties" + "responsibilities". (All) filed "Incident" Report's of the (TSI) communications, including e-mails, actions, and paperwork detailing "Plaintiff's Incident. To include "Training manuals for (All) (TSI) "Member's".

(ECF No. 43-1 at 2.[1])

In response, defendants informed plaintiff that "Special/Serious Incident Reports do not capture incidents based on Therapeutic Strategy and Intervention (TSI), which mainly includes de-escalation techniques, and occur routinely on the psychiatric units.[2]" (Id. at 3.) Defendants then explained that there are "no Operating Procedures governing this event," and no "documents containing the names of each of the team members involved in the alleged incident." (Id.) Defendants noted that the documents showing what led up to the TSI are in plaintiff's medical file, which he may seek to inspect and copy. Defendants also provided plaintiff with a copy of the TSI training manual.

Plaintiff argues that state law and regulations required that defendants have prepared the records he seeks. (ECF No. 41 at 1-3.) Defendants contend that besides the TSI manual they provided to plaintiff, there are no other documents responsive to request no. 1. Even if defendants were required to have prepared reports after the TSI incident at issue and failed to do so, the court cannot compel defendants to provide plaintiff with documents that they do not have in their possession, custody, or control. See Fed R. Civ. P. 34(a)(1). Accordingly, plaintiff's motion to compel further responses to request no. 1 is denied.

////

---

[1] Defendants have provided a copy of plaintiff's document requests and defendants' responses. (See ECF No. 43-1 at 2-5.)

[2] It appears from defendants' responses that they are asserting that no reports are ever prepared after the use of a TSI team, including after the use of a TSI team to restrain and involuntarily medicate a prisoner. The court relies on that assertion below. If that is not the case and reports are sometimes prepared in this situation, defendants shall so inform the court.

### B. Request No. 2

> Need the (Correctional Officer's) ("OP's") for their ("Extraction" Team's) when used within a (Psych-Unit) @ (DSH). Their "duties + "responsibilities"; including a listing of all their designated "equipment"."

(ECF No. 43-1 at 3.)

In response, defendants contended the request does not seek relevant evidence because correctional staff was not involved in the incident. (Id.) However, defendants provided plaintiff with copies of "Administrative Directive 5.07 & Nursing Policy & Procedures 3.06." Plaintiff contends there were "Extraction" Team personnel present during the incident and, therefore, his request is relevant. (ECF No. 41 at 4.) Defendants counter that plaintiff was not extracted from his cell and corrections personnel were not involved in plaintiff's involuntary medication. (ECF No. 43 at 7.) Defendants explain that they provided plaintiff with the "administrative directive for Therapeutic Strategy and Intervention; policies that govern the mental health staff that conducted the intervention at issue in this case." (Id.) These documents, along with the training manual provided to plaintiff in response to request no. 1 appear to be responsive to plaintiff's request no. 2. Because plaintiff does not explain what further documents he seeks or why the documents provided are inadequate, plaintiff's motion to compel a response to request no. 2 is denied.

### C. Request No. 3

> Need the Production of the "Original" Copy of (Nov. 17th, 2015) footage of the ("Hallway" video monitored surveillance) and the ("Outside" video monitored surveillance) for available "Review".

(ECF No. 43-1 at 3.)

Assuming plaintiff is referring to the hallway located outside his cell, defendants state that "after a reasonable and diligent search, there is no videotape responsive to this request." (ECF No. 43 at 7.) Plaintiff insists that such a video should exist. (ECF No. 46 at 4.) The court finds defendants' explanation too terse. Defendants do not explain whether or not the hallway is videotaped or whether, if it is, those video recordings are maintained. The court finds these

////

factors relevant to determine whether the search conducted by defendants was sufficiently thorough. The court will require defendants to respond further to this request.

### D. Request No. 4

> Need the ("Treatment" Teams (Committee)) filed on the "Plaintiff"; specifically, (ALL) "Documentation" involving the (Nov. 17th, 2015) "Incident".

(ECF No. 43-1 at 4.)

Defendants state that the request is vague and that, to the extent plaintiff is seeking documents regarding the reasons a TSI team was formed for the November 17, 2015 incident, those reasons are contained in plaintiff's medical file, which plaintiff has the right to examine. (Id.) Plaintiff does not specifically challenge defendants' response. He simply states that defendants' reply is more of the same – that he has access to his medical records. Plaintiff does not contend that he lacks access to his medical file. The court finds no basis to compel defendants to provide any further response to request no. 4.

### E. Request No. 5

> Need (ALL) "Responses" in the possession of the OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF JUSTICE, which include 602 "Third Level" Responses, and CDC-R "Medical" Report's and X-ray result's.

(ECF No. 43-1 at 4.)

Defendants responded that the request is overbroad to the extent it seeks documents regarding other inmates. To the extent it seeks documents related to plaintiff, defendants again point out that the information is available to plaintiff in his central and medical files. (Id.) As he did with request no. 4, plaintiff does not contend he has no access to his central or medical files and makes no other argument that defendants failed to properly respond to this request. Accordingly, the court again finds no basis to compel defendants to respond to it.

### F. Request No. 6

> Need a ("Spreadsheet") printed out and narrowed down for [Statistical "Data" Purposed] containing the number of times that (C/O "Extraction" Team's) and ("TSI" Team's) had been "activated"

////

6

for service, with or w/o "incident" Report's within Facility B; esp. (Unit B7) for the month of (November) and for the (2015) year.

(ECF No. 43-1 at 4-5.)

Defendants responded that there are no documents responsive to this request. (Id. at 5.) They further noted that they are not required to generate documents for plaintiff. The court agrees that defendants are not required to do so. See Goolsby v. Carrasco, No. 1:09–cv–01650 JLT (PC), 2011 WL 2636099, at *8 (E.D. Cal. July 5, 2011) (document request that would require the defendant to create a roster of employees is not a proper request under Fed. R. Civ. P. 34(a)); Robinson v. Adams, No. 1:08–cv–01380–AWI–SMS PC, 2011 WL 2118753, at *20, (E.D. Cal. May 27, 2011) (defendant is not required to create a document in response to a request for production). While defendants are not required to create a statistical report, they could be required to provide the underlying data, if available.

That said, defendants stated in their response to request no. 1 that reports are not prepared after incidents involving TSI teams. See n. 2, supra. If defendants determined there is no available documentation about the use of TSI teams in Facility B in November 2015, then there are, in fact, no documents responsive to plaintiff's request. However, if there are documents demonstrating the use of TSI teams during that time, then plaintiff may be entitled to that information.[3] Defendants will be ordered to provide a further response to this request to explain whether or not such documents exist.

### G. Plaintiff's Request to Compel Responses to Questions

In his motion to compel, plaintiff includes three questions he wants the court to compel defendants to answer. (ECF No. 42 at 2.) Initially, the court notes that what plaintiff is seeking is, essentially, to propound further interrogatories. Because this motion was filed less than 60 days prior to the May 28 discovery cut-off, those interrogatories come too late. However, the court also partly considers these questions as part of plaintiff's motion to compel and, as

////

---

[3] The court recognizes that any information about the use of TSI teams would likely need to be redacted to protect the privacy of other inmates

7

discussed above, the court will require further responses from defendants to some of plaintiff's requests.

The first question asks for the names of all TSI members who participated in the incident at issue. However, plaintiff indicates in his motion to compel that he sent an interrogatory to defendant Cunningham asking for the names of the "psych-techs" involved in the TSI. (See ECF 41 at 3.) While the court understands that plaintiff feels there were more psych-techs involved than identified by defendants, he did not move to compel further responses to his interrogatories and the court finds no basis to compel defendants to answer this first question.

Plaintiff's second question asks why reports and videos are not available to plaintiff. (See ECF No. 42 at 2.) As noted above, defendants have already stated that reports are not prepared after incidents involving TSI teams. If that is not the case, then defendants shall provide an explanation in their further response to document request no. 6, as discussed above. With respect to the video of the hallway outside plaintiff's cell, also as discussed above, the court will seek a further response from defendants on this issue.

Finally, in his third question, plaintiff asks what medication was used to sedate him during incident at issue. (Id.) This is a question properly posed to defendants in interrogatories and comes too late. Further, plaintiff should have access to this information in his medical file. The court will not compel defendants to respond to this third question.

## MOTION FOR INSPECTION AND A PROTECTIVE ORDER

Plaintiff seeks an order under Rules 26 and 34 of the Federal Rules of Civil Procedure requiring the court to "allow photograph's or video to be taken of the B7 Unit's 1) Cell#129-door, 2) It's inner cell features, 3) outside shot's of the above-mentioned cell-door, near the psych-tech's (PT's) Modular Station that watch's the unit's yard, and 4) the "Entrance" to the B7 Unit's hallway – to the distance of the "Registered Nurses" (RN's) Station." (ECF No. 44 at 1.) Plaintiff states that he is willing to agree to a protective order limiting the use of the photographs or video. To the extent plaintiff is seeking to have defendants provide existing materials, that is a discovery request that comes too late. To the extent plaintiff is asking the court to order defendants to take those photos and videos, the court is not authorized to do so. See Houston v.

8

Eldridge, No. 2:16-cv-2561 WBS KJN P, 2018 WL 1014459, at *6 (E.D. Cal. Feb. 22, 2018); Brown v. Clark, No. 1:10-cv-0124 GSA PC, 2013 WL 1087499, at *5 (E.D. Cal. Mar. 14, 2013) (court will not require defendants to create evidence that does not currently exist).

Finally, to the extent plaintiff is seeking to have a third party take these photographs or videos, the court is aware of no authority permitting it to provide plaintiff with this sort of third party assistance. Cf. Georgacarakos v. Wiley, No. 07-cv-1712-MSK-MEH, 2009 WL 440934, at *7 (D. Colo. Feb. 23, 2009) (in forma pauperis statute does not provide for the appointment of investigators). Further, plaintiff does not explain why these images would be relevant to his claims and the court does not find them relevant at this time. Accordingly, plaintiff's motion for inspection and a protective order will be denied.

For the foregoing reasons, IT IS HEREBY ORDERED as follows:

1. Plaintiff's motion to compel (ECF No. 42) is grant in part and denied in part:
   a. Within ten days of the date of this order, defendants shall file and serve on plaintiff further responses to document request nos. 3 and 6, as described above.
   b. In all other respects, plaintiff's motion to compel is denied.
2. Plaintiff's motion for inspection and a protective order (ECF No. 44) is denied.

Dated: July 30, 2018

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DB/prisoner-civil rights/cuff1999.mtc2

9